# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHEKI BELL** *and* **ISAAC LEWIS,** | ) CIVIL ACTION NO. 16-690 |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BOROUGH OF WEST MIFFLIN, WAL-** | ) |
| **MART STORES, INC., JOSEPH** | ) |
| **HOFFMAN** *and* **DAVID HAINES,** | ) |
| **Defendant.** | ) |
| | ) |

## OPINION

CONTI, Chief District Judge

### I. Introduction

Plaintiffs Sheki Bell ("Bell") and Isaac Lewis ("Lewis" and together with Bell, "plaintiffs") filed this lawsuit under 42 U.S.C. § 1983 ("§ 1983") and Pennsylvania common law. (ECF No. 1.) According to plaintiffs, defendants Borough of West Mifflin ("West Mifflin"), Wal-Mart Stores, Inc. ("Wal-Mart"), Joseph Hoffman ("Hoffman"), and David Haines ("Haines" and collectively with West Mifflin, Wal-Mart, and Hoffman, "defendants") deprived them of rights guaranteed to them by the United States Constitution, and Wal-Mart committed the torts of false arrest and malicious prosecution—as defined under Pennsylvania state law—against them.

Currently pending before the court is a motion to dismiss the amended complaint (ECF No. 33) filed by Wal-Mart. Wal-Mart argues that plaintiffs failed to state plausible claims against it under either § 1983 or Pennsylvania common law. On April 12, 2017, the court held a hearing to address Wal-Mart's motion to dismiss. The court—as fully set forth in this opinion—explained that it would grant the motion to dismiss because the factual allegations in the

amended complaint were not sufficient for the court to plausibly infer that: (1) Wal-Mart is liable to plaintiffs for maintaining a policy or custom that directly caused the deprivation of their constitutional rights; or (2) Wal-Mart is liable to plaintiffs under Pennsylvania common law based upon a theory of respondeat superior for the actions of its employees.

## II. __Procedural History__

On May 26, 2016, plaintiffs initiated this action by filing a three-count complaint (ECF No. 1) against defendants. Plaintiffs asserted the following claims against the following defendants:

- __Count one against Hoffman and Haines__: a claim for violations of plaintiffs' civil rights under 42 U.S.C. § 1983 ("§ 1983") based upon violations of the Fourth and Fourteenth Amendments to the United States Constitution;

- __Count two against West Mifflin__: a § 1983 claim based upon West Mifflin's "fail[ure] to supervise and train its police officers and for overlooking and/or covering up officer misconduct; and

- __Count three against Wal-Mart__: a § 1983 claim based upon Wal-Mart's violations of plaintiffs' civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and a claim titled "Pennsylvania State Common Law Tort."

(ECF No. 1.)

On July 11, 2016, West Mifflin, Haines, and Hoffman filed an answer to the complaint and affirmative defenses. (ECF No. 9.) On November 29, 2016, Wal-Mart filed a motion to dismiss the complaint and a brief in support of the motion. (ECF Nos. 21, 22.) On December 20, 2016, plaintiffs filed a response in opposition to Wal-Mart's motion to dismiss and a brief in support of the response. (ECF Nos. 24, 25.) On February 1, 2017, the court held a hearing with respect to the motion to dismiss, granted the motion without prejudice, and granted plaintiffs leave to file an amended complaint.

On March 2, 2017, plaintiffs filed an amended complaint. (ECF No. 32.) Plaintiffs in the amended complaint assert the same claims they asserted in the original complaint against the same defendants. (Id.) On March 13, 2017, Wal-Mart filed a motion to dismiss the amended complaint and a brief in support of that motion. (ECF Nos. 33, 34.) On April 3, 2017, plaintiffs filed a response in opposition to the motion to dismiss and a brief in support of the response. (ECF Nos. 36, 37.) On April 5, 2017, West Mifflin, Haines, and Hoffman filed an answer to the amended complaint and affirmative defenses. (ECF No. 38.) On April 12, 2017, the court held a hearing to address Wal-Mart's motion to dismiss.

### III. Factual Allegations in the Amended Complaint which are Accepted as True for the Purposes of the Motion to Dismiss

#### A. General Allegations

Plaintiffs are individuals who reside in Pittsburgh, Pennsylvania. (ECF No. 32 ¶¶ 2-3.) West Mifflin is, and was, at all relevant times a municipal entity created under Pennsylvania law with offices in West Mifflin, Pennsylvania. (Id. ¶ 4.) West Mifflin was at all relevant times the public employer of Hoffman and Haines. (Id.)

Wal-Mart is a corporation organized and existing under the laws of Delaware with a retail place of business located in West Mifflin, Pennsylvania. (Id. ¶ 5.) Hoffman and Haines were at all relevant times duly appointed and acting officers, servants, employees and agents of West Mifflin and its police department. (Id. ¶¶ 6-8.)

Bell is a 36-year-old African-American female who, at the time of the incidents alleged in the amended complaint, was seven and one-half months pregnant. (ECF No. 32 ¶ 15.) Lewis is an African-American male. (Id. ¶ 16.) On or about the evening of September 1, 2014, Bell and Lewis were at the Wal-Mart store located in West Mifflin, Pennsylvania (the "Wal-Mart store")

to return and exchange a large screen television they purchased earlier that day, which they determined was damaged. (Id. ¶¶ 17a, 17b.)[1]

### B. Allegations against Hoffman and Haines

On September 1, 2014, Hoffman and Haines were on-duty as police officers for West Mifflin and were summoned to respond to the Wal-Mart store for a reported "disturbance." (Id. ¶ 18a.) When Hoffman and Haines arrived at the Wal-Mart store, they encountered plaintiffs, who were engaged in a discussion with Wal-Mart employees concerning plaintiffs' attempted return of a large screen television they purchased at the Wal-Mart store earlier that day. (ECF No. 32 ¶ 17b.) Hoffman and Haines immediately detained Bell for thirty minutes in the parking lot of the Wal-Mart store in handcuffs, in full public view, and in the presence of her seven-year-old son and Lewis. (Id. ¶ 18b.) Hoffman and Haines detained Bell without conducting an investigation or questioning her. (Id.) According to plaintiffs, Hoffman and Haines assumed that—because plaintiffs are African-American—they were perpetrating a crime by attempting to return to the Wal-Mart store a television, that they had not purchased at the store. (Id.)

Hoffman and Haines had no reason to believe plaintiffs were armed, dangerous, or threatening. Bell:

- did not make any movements toward Hoffman, Haines, or any other person that could be interpreted as threatening;

- did not make any verbal threats to Hoffman, Haines, or any other person;

- did not touch Hoffman or Haines;

- clearly was unarmed; and

---

[1] Plaintiffs' complaint has duplicate paragraphs numbered 17 and 18. For ease of reference, the first numbered paragraph 17 is designated 17a and the second is designated 17b. Likewise, the first numbered paragraph 18 is designated 18a and the second is designated 18b.

– did not have any weapon or dangerous device readily at hand.

(ECF No. 32 ¶ 29.)

### C. Allegations against West Mifflin

According to plaintiffs:

– the conduct of Hoffman and Haines was a direct consequence of policies and practices of West Mifflin and its police department (ECF No. 32 ¶ 36);

– West Mifflin knew or should have known about Hoffman's and Haines' propensity to engage in misconduct of the type alleged in this case (Id. ¶ 40);

– "it was the policy and/or custom of the Borough of West Mifflin, acting through the West Mifflin Police Department to inadequately train, supervise and discipline its police officers, including the Defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers, such as were inflicted upon Plaintiff" (id.); and

– Hoffman and Haines believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but rather would be tolerated (id. ¶ 41.)

### D. Allegations against Wal-Mart

At all times relevant to the allegations contained in the amended complaint: Eric Grilley ("Grilley") was employed as a loss prevention officer at the Wal-Mart store; Chad Dubas ("Dubas") was employed as an assistant manager at the Wal-Mart store; and James Tucker ("Tucker") was employed as an assistant manager at the Wal-Mart store. (Id. ¶¶ 45-47.) According to plaintiffs, Grilley, Dubas, and Tucker acted in concert and within the scope of their employment with Wal-Mart. (ECF No. 32 ¶¶ 48-49.) Plaintiffs allege that Wal-Mart was a state actor at all times relevant to their claims because Grilley, Dubas, and Tucker:

had a prearranged agreement and understanding with the West Mifflin Borough Police Department and the individual officers thereof that any individual accused by [Wal-Mart] management of any sort of crime allegedly occurring on its premises, including shoplifting or other forms of theft, would be detained by the

West Mifflin Police and criminal charges would be advanced against them without question, independent investigation or determination of probable cause.

(ECF No. 32 ¶ 50.) According to plaintiffs, the prearranged agreement between West Mifflin and Wal-Mart "was motivated by discriminatory animus as it was particularly directed toward and against African-American individuals such as Plaintiffs." (Id. ¶ 51.)

Grilley, Dubas, and Tucker summoned the West Mifflin police department to deploy Hoffman and Haines to the Wal-Mart store as soon as plaintiffs appeared at the Wal-Mart store and before any evaluation was made of their attempt to return the large screen television. (ECF No. 32 ¶ 52.) Grilley, Dubas, and Tucker provided the West Mifflin police a "a false report and representation that Plaintiffs were engaged in an act of theft by deception by attempting to return to the [Wal-Mart] Supercenter store location a large screen television set which had allegedly not been purchased at [Wal-Mart] and on the further false report and representation that Plaintiff Sheki Bell had assaulted Dubas." (Id.) Plaintiffs, however, showed to Grilley, Dubas, and Tucker the receipt for their purchase of the large screen television they were attempting to return to the store. (Id.) Dubas commented that plaintiffs "looked suspicious." (Id.)

Grilley, Dubas, and Tucker communicated to Hoffman and Haines that plaintiffs were engaged in the act of theft by deception even though plaintiffs showed to Grilley, Dubas, and Tucker the receipt from the purchase of the large screen television they were attempting to return to the Wal-Mart store. (ECF No. 32 ¶ 53.) As a result of those false accusations, Hoffman and Haines seized, handcuffed, detained, and publicly humiliated Bell. They left her "on display" handcuffed in the public parking lot of the Wal-Mart store. (Id. ¶ 54.) At the time Hoffman and Haines arrived at the Wal-Mart store, there was no evidence—other than the false reports and

false representations by Grilley, Dubas, and Tucker—that plaintiffs had engaged in any act of theft or deception. (Id. ¶¶ 55, 57.)

While Bell and Lewis were being detained in the parking lot of the Wal-Mart store, they "were required to each sign a document in which they agreed to never again set foot on [Wal-mart] property anywhere in the United States or they would be immediately arrested and sent to jail. Plaintiffs requested a copy of the document they were so coerced into signing but their request was refused." (ECF No. 32 ¶ 56.)

Plaintiffs—as a result of the false reports made by Grilley, Dubas, and Tucker—were charged with various crimes including criminal attempt for theft by deception, criminal conspiracy for theft by deception, harassment and disorderly conduct. (ECF No. 32 ¶ 58.) Plaintiffs were placed under arrest and incarcerated for a period of time in the Allegheny County Jail. (Id.) "Ultimately all criminal charges brought against Plaintiffs arising from the incident were dismissed." (Id. ¶ 59.) Wal-Mart's actions caused damage to plaintiffs. (Id.¶¶ 60-63.)

## IV. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining about whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not

do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully....Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr, Corp., 809 F.3d 780, 876-87 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."Id. at 679. See also Burch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).

## V. **Analysis**

Section 1983 imposes civil liability upon any person who, while acting under color of state law, deprives another individual of rights, privileges, and immunities secured by the Constitution or federal law. Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2011). To prevail on a claim brought pursuant to § 1983, a plaintiff must show that (1) the defendant acted under color of law, and (2) the defendant's actions deprived the plaintiff of rights secured by the Constitution or federal statutes. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997). An action "under color of law" is the equivalent of "state action" under the Fourteenth Amendment. Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). Thus, to state a claim of liability under § 1983, a plaintiff must allege that he or she was deprived of a federal Constitutional or statutory right by a state actor. Id.

"The 'under color of law' requirement means that merely private conduct, no matter how discriminatory or wrongful, does not violate Section 1983." Francis v. Lehigh Univ., Civ. Action No. 10-4300, 2011 WL 204749, at *4 (E.D. Pa. Jan. 24, 2011) (citing Am. Manufacturers Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). "Nonetheless, action by a private party will satisfy the 'under color' requirement of Section 1983 if the deprivation of a federal right is 'fairly attributable to the state.'" Francis, 2011 WL 204749, at *4 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). The Third Circuit Court of Appeals has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists[,]" i.e., whether the complained of action is fairly attributable to the state. Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). The court of appeals explained those tests as follows:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)). The inquiry under any of the three tests is "'fact-specific.'" Kach, 589 F.3d at 646 (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995)).

The court need not address the state actor issue because—even assuming Wal-Mart acted under color of law—plaintiffs' claims against Wal-Mart fail under Rule 12(b)(6). The factual allegations in the amended complaint are insufficient to plausibly show that: (1) Wal-Mart is either directly liable for its own conduct or vicariously liable for the conduct of its employees; or (2) Grilley, Dubas, and Tucker acted within the scope of their employment with Wal-Mart when they allegedly committed the torts of false arrest or malicious prosecution against plaintiffs.

**A. Under § 1983 Wal-Mart cannot be held vicariously liable for the conduct of its employees, and plaintiffs did not set forth factual allegations sufficient to state a claim against Wal-Mart for its own conduct.**

In a § 1983 action, "a municipality cannot be held liable under a theory of respondeat superior." Victory Outreach Center v. Melso, 371 F.Supp.2d 642, 646 (E.D. Pa. 2004) (citing Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694 (1978)). A municipality, however, may be held directly liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" Monell, 436 U.S. at 694. Similarly, in a § 1983 action, a *private corporation* cannot be held liable under a theory of respondeat superior for the acts of its employees. Defreitas v. Montgomery County Correctional Facility, 525 F. A'ppx 170, 176 (3d Cir. 2013) ("To bring a § 1983 claim against a local government or government entity (including a private corporation, like CMC, that is alleged to be acting under color of state law, see Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir.2003)) for the actions of an

employee of one of those entities, a plaintiff cannot rely upon respondeat superior liability, but he must show that the entity had a policy or custom that caused his deprivation of a constitutional right."); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012); Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."); Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) ("Monell involved a municipal corporation, but every circuit court to consider the issue has extended the holding to private corporations as well."); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408–09 (2d Cir. 1990); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982) ("In Monell…, the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via respondeat superior alone. We see this holding as equally applicable to the liability of private corporations."); Iskander v. Village of Forest Park, 690 F.2d 126 (7th Cir. 1982); DeVargas v. Mason & Hanger–Silas Mason Co., 844 F.2d 714, 723 (10th Cir. 1988); but see Shields v. Illinois Dep't of Corrections, 746 F.3d 782, 789-93 (7th Cir. 2014) (reconsidered the decision of the Seventh Circuit Court of Appeals in Iskander v. Village of Forest Park, 690 F.2d 126 (7th Cir. 1982), that the Monell standard applies to private corporation and noted "there are substantial grounds to question the extension of the Monell holding for municipalities to private corporations").[2]

---

[2]    The Court of Appeals for the Seventh Circuit in Shields could not overrule Iskander. The court of appeals explained: "For reasons we explain below, however, Iskander and our cases following it on this point deserve fresh consideration, though it would take a decision by this court sitting en banc or pursuant to Circuit Rule 40(e), or a decision by the Supreme Court to overrule those decisions." Shields, 746 F.3d at 789. The court held:

> The answer under controlling precedents of this court is clear. Such a private
> corporation cannot be held liable under § 1983 unless the constitutional violation

Wal-Mart, therefore, cannot be held vicariously liable for the alleged acts of Grilley, Dubas, and Tucker that deprived plaintiffs of their constitutional rights. Plaintiffs argue, however, that "they have made…a sufficient demonstration" that Wal-Mart "maintained a policy, practice or custom which directly caused plaintiffs' constitutional harm[.]" (ECF No. 37 at 9.) Plaintiffs rely upon their allegations that they were made to "sign an agreement that they would never against set foot on [Wal-Mart] property <u>anywhere in the United States</u> or they would be immediately arrested and sent to jail." (<u>Id.</u> (emphasis in original).) They argue:

> [g]iven the scope and breadth of the agreement encompassing [Wal-Mart] property anywhere in the United States it is submitted that the allegations of the Amended Complaint establish a more than sufficient nexus to a [Wal-Mart] general corporate policy practice or custom with a causal link to the deprivation of Plaintiff's rights and indifference by [Wal-Mart] to the consequences.

(<u>Id.</u> at 10.)

Plaintiffs did not set forth factual allegations sufficient to plausibly show that Wal-Mart maintained an official policy or custom that directly caused plaintiffs' constitutional violation. In <u>Monell</u>, the Supreme Court held that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694; <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 657 (3d Cir. 2009). Under the "policy" path, a local government unit may be "sued directly if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " <u>City of St. Louis v. Praprotnik</u>, 485

---

was caused by an unconstitutional policy or custom of the corporation itself. Respondeat superior liability does not apply to private corporations under § 1983. <u>Shields</u>, 746 F.3d at 789.

U.S. 112, 121 (1988) (quoting <u>Monell</u>, 436 U.S. at 690). In addition, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur, 475 U.S. at 481). Under the "custom" path, § 1983 authorizes suit " 'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the [government] body's official decisionmaking channels.'" <u>Praprotnik</u>, 485 U.S. at 121 (quoting <u>Monell</u>, 436 U.S. at 690–91). "A course of conduct is considered...a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." <u>Andrews</u>, 895 F.2d at 1480 (quoting <u>Monell</u>, 436 U.S. at 690). "Custom requires proof of knowledge and acquiescence by the decisionmaker." <u>McTernan</u>, 564 F.3d at 658 (citing <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 154 (3d Cir. 2007)).

Plaintiffs in the amended complaint did not set forth factual allegations for the court to plausibly infer that Wal-Mart maintained a custom or policy that directly caused their constitutional deprivation. Plaintiffs' reliance on the "document in which they agreed to never again set foot on [Wal-Mart] property anywhere in the United States or they would be immediately arrested and sent to jail" is insufficient for the court reasonably to infer that Wal-Mart had a policy to use that kind of agreement to cause a false arrest to be made. (ECF No. 32 ¶ 56.) Paragraph 56 of the amended complaint contains the only allegations about the document referenced by plaintiffs and provides:

> 56. As further evidence of the conspiracy and concert of action between [Wal-Mart] acting by and through Grilley, Dubas and Tucker and Officers Hoffman and Haines, Hoffman informed Plaintiffs on the date of the incident while they were detained in the parking lot of the [Wal-Mart] Supercenter location that Plaintiffs were required to each sign a document in which they

agreed to never again set foot on [Wal-Mart] property anywhere in the United States or they would be immediately arrested and sent to jail. Plaintiffs requested a copy of the document they were so coerced into signing but their request was refused.

(ECF No. 32. ¶ 56.)

With respect to the policy theory under <u>Monell</u>, there are no allegations from which a reasonable inference may be drawn that Wal-Mart's corporate officers or someone with final decision-making authority *officially* promulgated and adopted either (1) the alleged agreement made by Grilley, Dubas, and Tucker with the West Mifflin police, or (2) the document Hoffman provided to plainitffs as a policy of the Wal-Mart.

With respect to the custom theory under <u>Monell</u>, plaintiffs do not allege that a final decisionmaker of Wal-Mart had knowledge of or acquiesced to the alleged agreement between Grilley, Dubas, and Tucker and the West Mifflin police. <u>McTernan</u>, 564 F.3d at 658 ("Custom requires proof of knowledge and acquiescence by the decisionmaker."). There are conclusory statements that the agreement and the actions taken pursuant thereto were custom of that Wal-Mart store. Plaintiffs allege:

50. At all relevant times hereto, [Wal-Mart], acting by and through Grilley, Dubas and Tucker was a state actor and/or was acting under color of state law for purposes of Plaintiff's claims arising under 42 U.S.C. §1983. This is the case because [Wal-Mart] acting by and through Grilley, Dubas and Tucker on information and belief had a prearranged agreement and understanding with the West Mifflin Borough Police Department and the individual officers thereof that any individual accused by [Wal-Mart] management of any sort of crime allegedly occurring on its premises, including shoplifting or other forms of theft, would be detained by the West Mifflin Police and criminal charges would be advanced against them without question, independent investigation or determination of probable cause.

51. Plaintiffs further aver said combination, conspiracy and understanding between [Wal-Mart] and the West Mifflin Borough Police Department was motivated by discriminatory animus as it was particularly directed toward and against African-American individuals such as Plaintiffs.

14

52. Specifically, on the day and date at issue Grilley, Dubas and Tucker summoned the West Mifflin Police Department to deploy Defendants Hoffman and Haines to the [Wal-Mart] Supercenter store location at 2531 Century Dr. West Mifflin, PA 15122 on a false report and representation that Plaintiffs were engaged in an act of theft by deception by attempting to return to the [Wal-Mart] Supercenter store location a large screen television set which had allegedly not been purchased at [Wal-Mart] and on the further false report and representation that Plaintiff Sheki Bell had assaulted Dubas….

(ECF No. 32 ¶¶ 50-52.) The only well-pled factual allegations in the foregoing allegations are that the Wal-Mart employees lied to the police.

The factual allegations in the amended complaint are not sufficient for the court to infer that someone from Wal-Mart with final decisionmaking authority knew of or acquiesced to that agreement or those actions in such a way that the actions complained of in this case were the "law" of Wal-Mart. "An official has policymaking authority for Monell purposes when the official is responsible as a matter of state law for making policy in the particular area of county business in question, and the official's authority to make policy in that area is final and unreviewable." Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 237-38 (3d Cir. 2013) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006)). Plaintiffs allege that Grilley was a loss prevention officer and Dubas and Tucker were assistant managers with the Wal-Mart store. Under those circumstances, a reasonable inference cannot be plausibly drawn to show that their authority was *final* and *unreviewable* by other Wal-Mart officials. Based upon the foregoing, plaintiffs failed to set forth factual allegations sufficient to plausibly allege a claim of Monell liability against Wal-Mart. Plaintiffs' § 1983 claim asserted against Wal-Mart will, therefore, be dismissed.

**B. The factual allegations in the amended complaint are insufficient for a reasonable inference to be plausibly drawn that Wal-Mart may be held liable for the conduct of its employees.**

False arrest[3] and malicious prosecution[4] are intentional torts under Pennsylvania common law. Watson v. Witmer, 183 F.Supp.3d 607, 616 (M.D. Pa. 2016) ("False arrest, false imprisonment, malicious prosecution, and IIED constitute intentional torts."). In order for Wal-Mart—an employer—to be held liable for the intentional acts of its employees, "the wrongful conduct in question must…be within the scope of [their] employment" with Wal-Mart. Win & Son, Inc. v. City of Phila., 178 F.Supp.3d 234, 244 (E.D. Pa. 2016) (citing Brennan v. Merch. & Co., 54 A. 891, 892 (1903)). "Scope of employment" under Pennsylvania common law is defined by the RESTATEMENT (SECOND) OF AGENCY § 228, which provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

  (a) it is of the kind he is employed to perform;

  (b) it occurs substantially within the authorized time and space limits;

  (c) it is actuated, at least in part, by a purpose to serve the master, and

  (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

---

[3]     The elements of a claim for false arrest under Pennsylvania law are: "(1) the detention of another person (2) that is unlawful." Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010.) "'An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.'" Id. (quoting Renk v. City of Pittsburgh, 76 A.2d 289, 293 (Pa. 1994).

[4]     The elements of a claim for malicious prosecution under Pennsylvania law are: "(1) institution of proceedings against the plaintiff without probable cause and with malice, and (2) the proceedings were terminated in favor of the plaintiff." Manley, 997 A.2d at 1241 (citing Turano v. Hunt, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993)).

RESTATEMENT (SECOND) OF AGENCY § 228; Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. Ct. 1989) ("Conduct within the scope of employment has been defined in the RESTATEMENT (SECOND) OF AGENCY § 228"); Win & Son, 178 F.Supp.3d at 244.

The factual allegations in the amended complaint are not sufficient for the court to plausibly infer that Grilley, Dubas, and Tucker acted within the scope of their employment with Wal-Mart. Plaintiffs did not set forth *any* factual allegations about the job responsibilities or duties of Grilley, as a loss prevention officer, or Dubas, and Tucker, as assistant managers, i.e., plaintiffs did not set forth any well-pled factual allegations about whether the alleged conduct of Grilley, Dubas, and Tucker was the "the kind [they were] employed [by Wal-Mart] to perform." RESTATEMENT (SECOND) OF AGENCY § 228.[5] Under those circumstances, the court cannot draw a reasonable inference to plausibly infer that Grilley, Dubas, and Tucker were acting within the scope of their employment when they allegedly, among other acts, lied to the police and conspired with the West Mifflin police to detain and criminally charge "any individual accused by [Wal-Mart] management of any sort of crime allegedly occurring on its premises…without question, independent investigation or determination of probable cause." (ECF No. 32 ¶ 50.) Additionally, there are no factual allegations from which the court could plausibly infer that Grilley, Dubas, and Tucker acted within the scope of their employment with Wal-Mart when Dubas immediately—without questioning or listening to plaintiffs—called the West Mifflin police and falsely accused plaintiffs of committing a crime because plaintiffs were African-American and "looked suspicious." (Id. ¶¶ 51-53.) The factual allegations in the amended

---

[5] Even if the court could reasonably infer that contact with the police was a part of Grilley's duties as a "loss prevention officer," plaintiffs in the amended complaint specifically allege that it was *Dubas* who refused to permit plaintiffs to return the television, called the police, and thought that plaintiffs looked suspicious. (ECF No. 32 ¶ 52.)

complaint are, therefore, insufficient for a reasonable inference to be plausibly drawn that Wal-Mart may be held liable for the conduct of its employees, Grilley, Dubas, and Tucker.

The above discussion focuses on the Restatement (Second) of Agency. There is the Restatement (Third) of Agency, but the Pennsylvania Supreme Court has not yet adopted *in full* that Restatement.[6] The section of the Restatement (Third) relevant to this case, i.e., § 7.07 entitled "Employee Acting Within Scope of Employment" "differs from its counterparts in Restatement Second, Agency §§ 228 and 229 because it is phrased in more general terms." RESTATEMENT (THIRD) AGENCY § 7.07 cmt. b. The comments to § 7.07 provide:

> Under Restatement Second, Agency § 228(1)(b), conduct falls within the scope of employment when it "occurs substantially within the authorized time and space limits." This formulation does not naturally encompass the working circumstances of many managerial and professional employees and others whose

---

[6]     The Pennsylvania Supreme Court has cited to various sections of the Restatement (Third) of Agency, i.e., §§ 2.01, 5.03, and 5.04, which are not specifically at issue in this case. <u>Official Comm. Of Unsecured Creditors of Allegheny Health Educ. & Research Found. V. Price WaterhouseCoopers, LLP</u>, 989 A.2d 313, 336 n.33 (Pa. 2010).

In <u>Vine v. State Employees' Retirement Board</u>, 956 A.2d 1088 (Pa. Commw. Ct. 2008), the Commonwealth Court of Pennsylvania predicted that the Pennsylvania Supreme Court would adopt sections 3.04, 3.08, and 3.11 of the Restatement (Third) of Agency. <u>Id.</u> at 1098 ("We believe…that the rules are consistent with Pennsylvania law, and we predict that the Court will embrace the Restatement provisions when the occasion arises."). On appeal, the Pennsylvania Supreme Court did not adopt those sections of the Restatement (Third) of agency and noted:

> The Commonwealth Court acknowledged…that this Court has not adopted these sections of the Restatement. Moreover, the court did not evaluate how these provisions may pertain in circumstances where the principal is alleged to have lacked the capacity to form a valid agency relationship in the first instance. <u>See</u> generally Restatement (Third) of Agency (2006) § 3.04 cmt. b ("The principal's capacity is requisite to a relationship of agency because the agent's actions within the scope of the relationship affect the principal's legal position.").

<u>Vine v. Pa. State Employees' Retirement Bd.</u>, 9 A.3d 1150, 1155 n.9 (Pa. 2010).

work is not so readily cabined by temporal or spatial limitations. Many employees in contemporary workforces interact on an employer's behalf with third parties although the employee is neither situated on the employer's premises nor continuously or exclusively engaged in performing assigned work. Moreover, under § 228(1)(c), conduct is not within the scope of employment unless "it is actuated, at least in part, by a purpose to serve" the employer. Under § 228(2), conduct is not within the scope of employment if it is "too little actuated by a purpose to serve" the employer. Under § 235, conduct is not within the scope of employment "if it is done with no intention" to perform an authorized service or an incidental act. These formulations are not entirely consistent; an act motivated by some purpose to serve the employer could still be "too little actuated" to be within the scope of employment.

In contrast, under subsection (2) of this section, an employee's conduct is outside the scope of employment when it occurs within an independent course of conduct intended to serve no purpose of the employer. Most cases apply the standard stated by this section.

RESTATEMENT (THIRD) OF AGENCY § 7.07 cmt. b.

Here, it is not necessary for the court to predict[7] whether the Pennsylvania Supreme Court would adopt § 7.07 because, even applying § 7.07 to this case, plaintiffs failed to set forth factual allegations sufficient from which the court could reasonably infer that Grilley, Dubas, and Tucker were acting within the scope of their employment with Wal-Mart. The commentary to § 7.07 provides:

An employee's conduct, although tortious, may be within the scope of employment as defined in subsection (2). If an employee commits a tort while performing work *assigned by the employer* or *while acting within a course of conduct subject to the employer's control*, the employee's conduct is within the scope of employment unless the employee was engaged in an independent course

---

[7] "In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case." <u>Berrier v. Simplicity fg., Inc.</u>, 563 F.3d 38, 45-46 (3d Cir. 2009) (citing <u>Nationwide Mut. Ins. Co. v. Buffetta</u>, 230 F.3d 634, 637 (3d Cir. 2000)).

of conduct not intended to further any purpose of the employer. The formulation in subsection (2) reflects the definition of scope of employment applied in most cases and in most jurisdictions.

RESTATEMENT (THIRD) OF AGENCY § 7.07 cmt. b (emphasis added). There are no factual allegations in the amended complaint about the job duties or work assignments of Grilley, Dubas, or Tucker or well-plead factual allegations about a course of conduct subject to Wal-Mart's control. Under those circumstances, the court cannot reasonably infer that their acts were within their scope of employment with Wal-Mart when they allegedly committed the acts complained of in the amended complaint.

As discussed above, plaintiffs failed to state plausible claims of false arrest and malicious prosecution against Wal-Mart based upon the conduct of its employees. The motion to dismiss will be granted without prejudice with respect to those claims.

## VI. <u>Conclusion</u>

Wal-Mart cannot be held vicariously liable for the actions of Grilley, Dubas, and Tucker under § 1983. The factual allegations in the amended complaint are not sufficient for a plausible inference to be drawn with respect to <u>Monell</u> liability on the part of Wal-Mart, i.e., Wal-Mart had a policy or custom that directly caused the deprivation of plaintiffs' constitutional rights.

The factual allegations in the amended complaint are not sufficient for a plausible inference to be drawn that Grilley, Dubas, and Tucker acted within the scope of their employment with Wal-Mart when they allegedly committed the torts of false arrest and malicious prosecution against plaintiffs.

Wal-Mart's motion to dismiss the amended complaint (ECF No. 33) will be granted, and all plaintiffs' claims asserted against Wal-Mart in the amended complaint will be dismissed without prejudice. Wal-Mart will be dismissed as a party in this action. If plaintiffs desire to file

a second amended complaint, they must file a motion for leave to file a second amended complaint and attach the proposed second amended complaint to the motion.

An appropriate order will be entered.

BY THE COURT,

Dated: May 8, 2017

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge